UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

RUTH SONNEK,

Plaintiff,

Civil No. 00-1070 DWF/AJB

v.

UNITED STATES OF AMERICA,

Defendant.

**REPORT AND RECOMMENDATION**

Reid G. Rischmiller, RISCHMILLER, KNIPPEL & ARONSON, Minneapolis, Minnesota, for Plaintiff.

Friedrich A. P. Siekert, Assistant United States Attorney for the District of Minnesota, for the Defendant.

Plaintiff brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff contends that the United States Bureau of Prisons ("BOP") was negligent in failing to inform her of a mass in her lung, which was reflected on a chest X-ray taken as part of a physical examination. The above matter is before the Court upon the Government's motion seeking dismissal pursuant to FED. R. CIV. P. 12(b)(1), for lack of subject matter jurisdiction. The Government contends that, because the physical examination was a required part of her federal employment, Plaintiff's claim falls under the Federal Employees Compensation Act ("FECA"). Therefore, the Government argues, this action should be dismissed or stayed pending a decision by the Secretary of Labor. For reasons set forth below, the Court recommends that the Government's motion be denied.

FILED JUL 10 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

## I. BACKGROUND

The BOP operates a facility known as the Federal Medical Center-Rochester ("FMCR"). Wagner Decl., ¶ 2. On February 11, 1998, Plaintiff completed an application for federal employment as a clinical nurse at FMCR. Wagner Decl., ¶ 7. By February 19, a background check had been initiated and Plaintiff had participated in a pre-employment interview and a panel interview.[1] On the same day as her interviews (February 19), FMCR made, and Plaintiff accepted, a conditional offer of employment.[2] Wagner Decl., ¶¶ 9 & 10.

Also, on February 19, 1998, Plaintiff participated in the required physical.[3] The physical included a general examination, blood tests, a urinalysis and perhaps most importantly for purposes of this action, a chest X-ray. The X-Ray revealed a well circumscribed mass in plaintiffs' left lung. The plaintiff was not informed of this result. The general examination was conducted by Physician's Assistant Gene Kliber. He recorded his findings on a Certificate of Medical Examination, which he signed upon completion. The Certificate of Medical Examination indicated that Plaintiff's respiratory tract was within normal limits and also indicated that Plaintiff was fit for federal employment. The following day (February 20), Dr.

[1] Prior to receiving a conditional offer of employment, a person must undergo a background check, a pre-employment interview and a panel interview. Wagner Decl., ¶ 9.

[2] Due to a nursing staff shortage, FMCR expedited the hiring process. Wagner Decl., ¶ 9.

[3] The conditional offer of employment was contingent upon a successful completion of a physical, drug-screening urinalysis and a final background check. A conditional offer must be accepted prior to proceeding to the physical examination. Wagner Decl., ¶ 10.

Trung Tran, a federal employee, signed and dated the Certificate of Medical Examination.[4] Wagner Decl., ¶ 10 & Ex. H. The X-Ray result again was never mentioned to plaintiff.

On February 23, the Certificate of Medical Examination was signed by Dawn Hellickson, the Human Resource Manager, confirming that Plaintiff was qualified for federal employment. Wagner Decl., ¶ 11 & Ex. H. By letter dated February 24, Plaintiff was notified of her appointment. Wagner Decl., ¶ 12 & Ex. I. On February 25, Hellickson sent a follow-up letter confirming Plaintiff's appointment. Wagner Decl., ¶ 13 & Ex. J. Also, on February 25, Dr. C.R. Nicolosi reviewed Plaintiff's chest X-ray. He prepared a report, noting "a well circumscribed mass within the left lower lung field." Tran Decl., Ex. B. Once again this result was never communicated to plaintiff.

Plaintiff reported for duty and took an Oath of Office on March 2, 1998. The paperwork memorializing her Oath of Office indicates that Plaintiff's date of appointment was March 1, 1998, which was the beginning of a pay period. Rischmiller Aff., Ex. 1 & Wagner Decl., ¶ 14.

On March 11, Dr. Tran initialed the radiology report. Tran Decl., ¶ 4 & Ex. B. Thereafter, Plaintiff was never notified of the abnormality noted in the report. Siekert Decl., Ex. M & Complaint, ¶ VIII. On October 29, 1998, about eight months after her physical examination, Plaintiff sought emergency medical treatment, complaining of chest pain. A chest X-ray revealed a large mass in Plaintiff's lung. Siekert Decl., Ex. K. She was eventually diagnosed with metastatic synovial sarcoma. Complaint, ¶ IX.

[4]BOP policy requires that, if an examination is conducted by someone other than a physician, a staff physician shall review and co-sign. Wagner Decl., ¶ 11.

On October 4, 1999, Plaintiff submitted an FTCA claim for personal injuries, claiming the BOP was negligent in handling the findings noted in the radiology report. Siekert Decl., Ex. L. The Government took the position that Plaintiff's injuries might be covered by the FECA. Siekert Decl., Ex. M. The Government failed to make final disposition of Plaintiff's claim within 180 days after it was filed and therefore, pursuant to 28 U.S.C. § 2675, Plaintiff timely filed this action. Complaint, ¶¶ V & VI. As noted above, the Government now argues that Plaintiff's claim falls under the FECA and is therefore barred.

## II. DISCUSSION

The FECA provides that the United States "shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a). The FECA is a federal employee's exclusive remedy against the United States for work-related injuries. 5 U.S.C. § 8116(c). Meaning, the FECA bars claims against the United States, under the FTCA, for work-related injuries. Pourier v. U.S., 138 F.3d 1267, 1267-68 (8th Cir. 1998).

If a claim is brought under the FTCA and there is a "substantial question" as to whether the injury comes within the coverage of the FECA, a court must stay the action pending a decision by the Secretary of Labor. Farley v. U.S., 162 F.3d 613, 615 (10th Cir. 1998) (citations omitted). A substantial question exists unless a court is certain that the Secretary of Labor would not find coverage. Id. at 615-16. Here, the Government contends that there is a substantial question as to whether Plaintiff's injury is covered by the FECA. For reasons that follow, the Court disagrees.

Plaintiff's injuries were allegedly caused by an act of omission arising from a pre-employment medical examination. As interpreted by the Department of Labor, the FECA does not cover such injuries where the injured person had not been appointed when the examination was performed. See FECA Program Memoranda Nos. 42 & 186 (Rischmiller Aff., Ex. 9 & 10). Therefore, it must first be ascertained when Plaintiff was appointed.

The Government contends that Plaintiff's employment began on February 19, 1998, the day she accepted FMCR's conditional offer of employment. This argument is not only unpersuasive, it tests the boundaries of genuineness. The letter containing Plaintiff's conditional offer reads in relevant part, "This letter is not to be construed as a firm job offer. We do not recommend that you give notice to any employers at this time." Wagner Decl., Ex. G. Moreover, the BOP itself declares that Plaintiff's date of appointment was March 1, 1998. Wagner Decl., ¶ 14 & Rischmiller Aff., Ex. 1. The Court is certain that, if given the opportunity, the Secretary of Labor would find that Plaintiff's employment began, at the earliest, on March 1, 1998.

The Government makes an alternative argument, turning its attention away from the date of employment and towards the date of the alleged negligence. The Government suggests that, even if Plaintiff's employment began in the beginning of March, part of the alleged negligence occurred on March 11, when Dr. Tran signed the Certificate of Medical Examination. Therefore, the argument goes, because at least some of the alleged negligence occurred vis-a-vis a federal employee, the FECA applies.

In making this argument, however, the Government loses sight of the most fundamental analysis employed by the cases cited in its own brief. For the FECA to cover an injury, the

conditions of employment must have created the "zone of special danger" out of which the injury arose. Bruni v. U.S., 964 F.2d 76, 79 (1st Cir. 1992) (citing O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 506-07, 71 S.Ct. 470, 471-72, 95 L.Ed. 483 (1951)). This is not the case here. To see why this is true, it is helpful to state the issue another way: "How is it that Plaintiff became susceptible to the alleged negligence of Dr. Tran?" The question is not difficult and, indeed, the Court is willing to say that the answer is *clear*. Plaintiff placed herself into the hands of Dr. Tran, not as a requirement of her federal employment, but in the process of testing whether she qualified for federal employment. It matters not that part of the alleged negligence occurred on March 11 or thereafter. What matters is that the alleged negligence arose from the pre-employment physical examination. Thus, this case is aligned with at least two decisions of the Employees' Compensation Appeals Board, where coverage under the FECA was denied because the injured party was engaged in pre-employment testing at the time of the injury. Larry Knoke, 39 E.C.A.B. 353 (E.C.A.B. 1988); William K. Bowen, No. 96-640, 1997 WL 1432694 (E.C.A.B. December 23, 1997).

The Government makes much of the standard by which its motion must be judged. The Government stops just short of suggesting that there is no telling what the Secretary of Labor might do with this case and therefore; the Court must stand down. The Court, however, proceeds under the assumption that, if given the opportunity, the Secretary of Labor will get it right. Moreover, the Court has reviewed the facts and the applicable law and concludes that the correct answer is clearly apparent. There is no need to send this matter to the Secretary of Labor for a determination on the applicability of the FECA.

As a final note, the memorandum opinion of Deborah Sanford does not change the Court's opinion.[5] Her opinion does not set forth the specific facts upon which her conclusion rests. This is particularly unsettling considering her memorandum opinion reads, in pertinent part, "Actual adjudication of a claim presented pursuant to the FECA based upon the events set forth in the complaint may disclose *different or additional facts that substantially affect the ultimate conclusion of this matter*." Sanford Decl. Ex. A (emphasis added).

## III. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that:

1. Defendant's motion be denied [Docket No. 25].

Dated: 7/10/01

Arthur J. Boylan
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within 10 days.

AJB

[5] The Government submitted a memorandum opinion from Deborah B. Sanford of the Department of Labor. Ms. Sanford concluded that "there is a significant possibility that a claim by [P]laintiff Ruth Sonnek for compensation for the failure of the United States to communicate in a timely manner the results of a February 19, 1998 chest x-ray would be covered under the FECA." Sanford Decl., Ex. A.